## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| FREDDIE J. SMITH AND LORETTA D. SMITH, <br><br> PLAINTIFFS, <br><br> V. <br><br> AZIYO BIOLOGICS, INC., MEDTRONIC SOFAMOR DANEK USA, INC., SPINALGRAFT TECHNOLOGIES, LLC, DCI DONOR SERVICES, INC., AND NEW MEXICO DONOR SERVICES <br><br> DEFENDANTS. | CIVIL ACTION NO. <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs, FREDDIE J. SMITH and LORETTA D. SMITH, by and through their attorneys, as and for their complaint against Defendants, Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., Spinalgraft Technologies, LLC, DCI Donor Services, Inc., and New Mexico Donor Services (collectively, "Defendants"), allege as follows:

## I.  INTRODUCTION

1.    This action seeks to recover damages for the personal injuries suffered by FREDDIE J. SMITH, which were the direct and proximate result of the wrongful conduct of AZIYO BIOLOGICS, INC., MEDTRONIC SOFAMOR DANEK USA, INC., SPINALGRAFT TECHNOLOGIES, LLC, DCI DONOR SERVICES, INC.,  and NEW MEXICO DONOR SERVICES in connection with the procurement, research, testing, design, development, manufacture, production, inspection, labeling, advertisement, marketing, promotion, sale, and distribution of FiberCel Fiber Viable Bone Matrix ("FiberCel") and its components.

1

## II.  PARTIES

2.  Plaintiffs, FREDDIE J. SMITH and LORETTA D. SMITH, husband and wife, ("Plaintiffs"), are, and at all relevant times were, residents of the State of Louisiana, residing in Shreveport, Caddo Parish, Louisiana.

3.  Defendant AZIYO BIOLOGICS, INC. ("Aziyo") is a Delaware corporation, whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Aziyo's principal place of business is located at 12510 Prosperity Drive, Suite 370, Silver Springs, Maryland 20904.  Aziyo does business throughout the United States, including conducting regular business in Louisiana.

4.  Aziyo sells a variety of medical products, including implantable electronic devices, orthopedic and spinal repair products, and soft tissue reconstruction products.

5.  Upon information and belief, Aziyo developed, manufactured, marketed, promoted, distributed, supplied and/or sold FiberCel which was implanted into Plaintiff FREDDIE J. SMITH, and which is the subject of this complaint.

6.  Defendant MEDTRONIC SOFAMOR DANEK, INC., is incorporated in Tennessee, having its principal place of business at 2600 Sofamor Danek Drive, Memphis, TN 38132 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. MEDTRONIC SOFAMOR DANEK, INC., does business throughout the United States, including conducting regular business in Louisiana.

7.  Defendant SPINALGRAFT TECHNOLOGIES, LLC is a limited liability company having its principal place of business at 4340 Swinnea Road, Memphis, TN 38118 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. SPINALGRAFT TECHNOLOGIES, LLC does business throughout the United States, including conducting regular business in Louisiana.

2

8.      Defendant SPINALGRAFT TECHNOLOGIES, LLC has three (3) members: Jason M. Bristow, Martha Ha, and Philip J. Albert. Upon information and belief, all members are citizens of the State of Minnesota.

9.      MEDTRONIC SOFAMOR DANEK USA, INC. and SPINALGRAFT TECHNOLOGIES, LLC (collectively, "Medtronic") develop therapeutic and diagnostic medical products, and are among the world's largest medical technology, services, and solutions companies.

10.     Upon information and belief, Medtronic was designated as the exclusive U.S. distributor of the FiberCel manufactured by Defendant Aziyo.

11.     At all times relevant, Medtronic distributed, supplied and/or sold FiberCel, which was implanted into Plaintiff, FREDDIE J. SMITH, and which is the subject of this complaint.

12.     Defendant DCI DONOR SERVICES, INC. is incorporated in Tennessee, having its principal place of business at 566 Mainstream Drive, Suite 300, Nashville, TN 37228 USA with a registered agent for service located at Corporation Service Company, 2908 Poston Ave, Nashville, TN 19808. DCI DONOR SERVICES, INC. is the parent company of NEW MEXICO DONOR SERVICES. DCI DONOR SERVICES does business throughout the United States, including conducting regular business in Louisiana.

13.     Defendant NEW MEXICO DONOR SERVICES is incorporated in New Mexico, having its principal place of business at 1609 University Boulevard NE, Albuquerque, NM 87102 USA with a registered agent for service located at Corporation Service Company, MC-CSC1726 E. Michigan Drive, Ste. 101, Hobbes, NM 88240. NEW MEXICO DONOR SERVICES does business throughout the United States, including conducting regular business in Louisiana.

14.     DCI DONOR SERVICES, INC. and NEW MEXICO DONOR SERVICES (collectively, "Donor Defendants" or "Donor Services") are engaged in the business of, inter alia, locating, properly identifying and qualifying parts of human cadavers that should at all times qualify for processing, distribution and ultimately for use in a wide variety of surgical procedures where human bone and tissue, etcetera, can be appropriately and safely utilized.

15.     Upon information and belief, the Donor Defendants harvested, processed, supplied and/or sold human tissue for use in FiberCel which was implanted into Plaintiff, FREDDIE J. SMITH, and which is the subject of this complaint.

16.     Defendants, at all times relevant to this lawsuit, manufactured, developed, designed, tested, marketed, distributed, promoted, supplied and/or otherwise sold (directly or indirectly) FiberCel and/or the human tissue used in FiberCel to various locations for use in surgeries requiring bone grafting, including to Specialist Hospital in Shreveport, Louisiana, where contaminated FiberCel was surgically implanted into Plaintiff FREDDIE J. SMITH, causing him to suffer harm as described herein.

17.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

18.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally, unless otherwise stated.

## III.     JURISDICTION AND VENUE

19.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because complete diversity exists between the parties.

20.     At all times relevant to this action, the Defendants have been engaged, either directly or indirectly, in the business of manufacturing, testing, marketing, selling, and/or distributing FiberCel and/or the human tissue used in FiberCel within the State of Louisiana, with a reasonable expectation that the product would be used in this state, and thus regularly solicited or transacted business in this state.

21.     Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. In addition, the Defendants regularly conduct business in this district.

## IV.     FACTUAL ALLEGATIONS

### A.  FiberCel Fiber Viable Bone Matrix

22.     FiberCel Fiber Viable Bone Matrix ("FiberCel") is made from human tissue consisting of cancellous bone particles with preserved cells, combined with demineralized cortical fiber. The human tissue donor product involved in this case was harvested by Defendants DCI Donor Services, Inc and New Mexico Donor Services (the "Donor Defendants"). It is engineered to be like natural tissue and is used as a bone void filler in various orthopedic and spinal procedures.  The allografts contain the scaffold, growth factors and cells required for regeneration critical for successful bone formation.

23.     FiberCel is marketed for use in orthopedic and reconstructive bone grafting procedures with the use of autologous bone or other forms of allograft bone or alone as a bone graft.  FiberCel is made with donor tissue and growth factor cells.

24.     On June 20, 2019, Aziyo announced it had signed an exclusive, multi-year distribution agreement with the Medtronic Defendants in the U.S. orthopedic market. According to the agreement, Aziyo agreed to manufacture and supply FiberCel to Medtronic for distribution through the company's sales and marketing organization.

**B.  FiberCel Recall**

25.     On June 2, 2021, the United States Food & Drug Administration (FDA) issued an urgent voluntary recall of FiberCel, specifically three products from Donor Lot Number NMDS210011: VMB9901, VBM9905, and VBM9910.

26.     Aziyo and Medtronic initiated the voluntary recall in response to reports of patients testing positive for Tuberculosis and post-surgical infections following the surgical implantation of FiberCel as part of an orthopedic or spinal procedure.

27.     Tuberculosis ("TB") is an infectious disease caused by bacteria known as Mycobacterium tuberculosis.  TB is highly contagious, and mostly impacts the lungs, but can also spread through the lymph nodes to other parts of the body, including the kidneys, brain, and spine.

28.     Once mycobacterium tuberculosis is introduced to the body, the bacteria must then proliferate within the new host for the host to develop disease.  When this bacterium is introduced in a surgical wound, the patient is already in an immunocompromised position, causing them to have an increased likelihood of developing TB, which can be fatal.

29.     The recalled contaminated FiberCel lot contained 154 units delivered to 20 states.

30.     Defendant Aziyo has acknowledged many post-surgical infections. Many patients that have received FiberCel from this Donor Lot have tested positive for Tuberculosis, including Plaintiff, FREDDIE J. SMITH.

31.     This recall acknowledged that viruses and bacteria, including Tuberculosis, can be transplanted into patients along with the FiberCel product.

**C. Plaintiff Received the Contaminated FiberCel and as a Result, Suffered Severe Injury**

32.     Plaintiff FREDDIE J. SMITH underwent spinal surgery on March 25, 2021, at Specialists Hospital in Shreveport, Louisiana.

33.     Plaintiff FREDDIE J. SMITH's surgery included bone grafting, utilizing FiberCel from Donor Lot Number NMDS210011.

34.     Unbeknownst to Plaintiff or his physicians at the time of his surgery, the FiberCel implanted into Plaintiff was contaminated with tuberculosis.

35.     On or about June 8, 2021, Plaintiffs were notified that FREDDIE J. SMITH may have been exposed to TB.  Upon information and belief, Plaintiff subsequently tested positive for TB in or around January 27, 2022.

36.     Plaintiff's tuberculosis and associated complications and injuries were caused by the contaminated and recalled FiberCel used in his operation.

37.     As a direct and proximate result of the implantation of contaminated FiberCel, Plaintiff, FREDDIE J. SMITH, is forced to undergo a grueling medical protocol to manage his TB diagnosis.

38.     Plaintiff, FREDDIE J. SMITH, will require continued medical monitoring now and into the future in order to monitor Plaintiff's health related to the ongoing and serious nature of his tuberculosis diagnosis.

39.     Plaintiff, FREDDIE J. SMITH, would not have suffered from tuberculosis and additional associated complications and injuries had Defendants sold and distributed a product that was free from tuberculosis contamination.

40.     Plaintiff, FREDDIE J. SMITH, further has experienced significant side effects from the extensive treatments causing a cascade of sequential complications caused by the contaminated FiberCel product.

41.     As a direct and proximate result of Plaintiff's exposure to Defendants' contaminated FiberCel product used in his spinal surgery, Plaintiff, FREDDIE J. SMITH, has suffered and continues to suffer from severe pain and discomfort, emotional distress, the loss of daily functions, and economic loss, including, but not limited to, present and future medical expenses, lost earnings, and future lost earning capacity, all of which are a direct result of Defendants' liability producing conduct.

42.     Plaintiffs had no way of knowing about the risk of Tuberculosis associated with the use of FiberCel until they learned of the FiberCel recall in June 2021.  Plaintiffs, through the exercise of reasonable care, could not have discovered the conduct by Defendants alleged herein. Accordingly, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, against Defendants, known or unknown.

43.     Plaintiff, LORETTA SMITH, as a result of the injuries suffered by Plaintiff, FREDDIE J. SMITH, her husband, suffered loss of love, service, society, affection, and support, for which she is entitled to recover loss of consortium damages in a reasonable amount.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the Louisiana Products Liability Act**
**(Against Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies LLC)**

44.     Plaintiffs incorporate all paragraphs as though the same were set forth at length herein.

45.     Plaintiffs bring their claims as claimants under the Louisiana Products Liability Act, La.Rev.Stat.Ann. § 9:2800.51 *et seq*, hereinafter "the Act."

46.     Defendants Aziyo Biologics, Inc. Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies LLC, individually and/or jointly, are manufacturers under the Act of all or portions of the subject FiberCel.  FiberCel is a product under the Act.

47.     Defendants are not harvesters, rather they process, mix, create, build, and otherwise package human tissue and bone into products called FiberCel, which are constructed products to be used in varying types of surgeries, therefore making FiberCel a product and outside the scope of La.Rev.Sat.Ann § 9:2797 and and La.Civ. Code 2322.1.  The referenced statute and state code are inapplicable.

48.      At all times material to this lawsuit, Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing, and/or selling FiberCel for the sale to, and use by, members of the public.

49.     Defendants manufactured, distributed, and/or sold the FiberCel product which was implanted into Plaintiff's body during his spinal surgery.

50.     Defendants owed a duty to Plaintiff to manufacture a product without unreasonably dangerous defects that would cause him injury, and all other duties under the Act.

51.     In June 2021, Defendants recalled FiberCel from Donor Lot Number NMDS210011, which was contaminated with TB.

52.     Defendants' quality control should have, but failed to, discover that the aforementioned FiberCel Donor lot was contaminated.

53.     At all times herein mentioned, the aforementioned FiberCel was defective in its manufacture in that the FiberCel units were contaminated with TB, which in turn transplanted the serious and potentially deadly illness to patients, including Plaintiff, who was implanted with the contaminated FiberCel.

54.     The FiberCel unit manufactured by Defendants and implanted into Plaintiff was unsafe, defective, and unreasonably dangerous before it left Defendants' possession, and was in the same condition when implanted into Plaintiff as when placed into the stream of commerce by Defendants.

55.     Defendants knew or should have known, based on the industry and scientific knowledge available at the time of their manufacture and distribution, that FiberCel contaminated with TB was defective, unsafe, and unreasonably dangerous to FiberCel users, including Plaintiff.

56.     At all times herein mentioned, ordinary consumers, including Plaintiff, FREDDIE J. SMITH, who was implanted with FiberCel, could not and would not have recognized the potential defects, risks, and dangers of contaminated FiberCel units.

57.     At all times herein mentioned, the aforementioned FiberCel was implanted into Plaintiff, FREDDIE J. SMITH, in a manner which was reasonably foreseeable to the Defendants.

58.     As a direct and proximate result of Plaintiff's use of the defective FiberCel units as manufactured, designed, sold, supplied, and distributed into the stream of commerce by Defendants, Plaintiff, FREDDIE J. SMITH, contracted TB, which has caused Plaintiff to suffer harm, damages, and economic loss, and Plaintiff, FREDDIE J. SMITH, will continue to suffer such harm into the foreseeable future.

59.     Defendants owe a duty to the general public, specifically to Plaintiff, FREDDIE J. SMITH, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing, and distribution of FiberCel.  Defendants failed to exercise reasonable care in the design of FiberCel because, as designed, FiberCel was capable of causing serious personal injuries such as those suffered by Plaintiff during the foreseeable use of FiberCel.

60.     The FiberCel implanted into Plaintiff, FREDDIE J. SMITH, was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use.  In addition, this product was dangerous to the extent beyond that which could reasonably be contemplated by Plaintiff, FREDDIE J. SMITH.

61.     The FiberCel implanted into Plaintiff, FREDDIE J. SMITH, was defective at the time it was distributed by the Defendants or left their control.

62.     Defendants' failure to exercise reasonable care in the design, marketing, selling, distributing, and manufacturing of FiberCel was a proximate cause of Plaintiff's injuries and damages.

63.     Additionally, Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of FiberCel to foreseeable users, including Plaintiff, FREDDIE J. SMITH.

64.     Defendants knew or reasonably should have known that the warnings provided to users of FiberCel regarding the risks associated with its use were incorrect or inadequate in at least the following material respects:

> a. FiberCel was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects; and
>
> b. Defendants failed to include adequate warnings that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of FiberCel, including, among other things, development of TB;

11

      c.   Defendants failed to immediately warn patients and physicians after they learned that their product was contaminated with TB; and

      d.   Otherwise failed to provide adequate warnings.

65.     By failing to warn Plaintiff, FREDDIE J. SMITH, and Plaintiff's physicians of the adverse health risks associated with FiberCel, Defendants breached their duty to Plaintiff, FREDDIE J. SMITH, of reasonable care and safety.

66.     Defendants, as manufacturers and distributors of human tissue products, are held to the level of knowledge of an expert in the field; and further, Defendants knew, or should have known, that the warnings they distributed regarding the risks of a contaminated product causing TB and associated injuries and complications following the implantation of FiberCel were inadequate.

67.     Plaintiff did not have the same expert knowledge as Defendants, and no adequate warning of other clinically relevant information and data was communicated to Plaintiff, FREDDIE J. SMITH, or Plaintiff's physicians.

68.     Defendants have a continued duty to provide consumers, including Plaintiff, FREDDIE J. SMITH, and Plaintiff's physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with FiberCel, as it came or could have become available to Defendants.

69.     Defendants marketed, promoted, distributed, and sold an unreasonably dangerous and defective human tissue product, FiberCel, to health care providers empowered to implant FiberCel into consumers, including Plaintiff, FREDDIE J. SMITH, without adequate warnings and other clinically relevant information and data.  Through both omission and affirmative misstatements, Defendants mislead the medical community about the risk and benefit balance of FiberCel, which resulted in severe injury to Plaintiff.

70.     Defendants knew or should have known that consumers, including Plaintiff, FREDDIE J. SMITH, specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures.

71.     Defendants had an obligation to provide Plaintiff, FREDDIE J. SMITH, and Plaintiffs' physicians with adequate clinically relevant information, data, and warnings regarding the adverse health risks associated with the implantation of FiberCel.

72.     By failing to provide Plaintiff, FREDDIE J. SMITH, and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with the implantation of FiberCel, Defendants breached their duty of reasonable care and safety.

73.     Defendants' actions described above were performed willfully, and with reckless disregard of the life and safety of the Plaintiff, FREDDIE J. SMITH, and the general public.

74.     Defendants' failure to provide adequate warnings was a proximate cause of Plaintiff's injuries and damages.

75.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff, FREDDIE J. SMITH, was exposed to contaminated FiberCel and suffered the injuries and damages set forth herein above.

## SECOND CAUSE OF ACTION

### Violation of the Louisiana Products Liability Act
### (Against DCI Donor Services, Inc. and New Mexico Donor Services)

76.     Plaintiffs incorporate all paragraphs as though the same were set forth at length herein.

77.     Plaintiffs bring their claims as claimants under the Louisiana Products Liability Act, La.Rev.Stat.Ann. § 9:2800.51 *et seq*, hereinafter "the Act."

78.     The Donor Defendants are manufacturers under the Act of all or portions of the subject FiberCel.  FiberCel is a product under the Act.

79.     When the Donor Defendants harvested these products, there was no intention to utilize human organs or tissue surgically implanted into a patient as-is, unlike the language of the La.Rev.Sat.Ann § 9:2797 and La.Civ. Code 2322.1.  Rather, the intention was to have the product frozen, processed, mixed, ground up, altered, and packaged as a distinctly created product, in this case FiberCel, therefore taking the harvested products involved in this case outside the scope of § 9:2797.

80.     At all times herein mentioned, the Donor Defendants harvested and processed human cadavers and sold and distributed human tissue into the stream of commerce for use in the aforementioned FiberCel.

81.     The Donor Defendants' quality control should have, but failed to, discover that the cadaver and human tissue sold for use in the aforementioned FiberCel lot was contaminated with tuberculosis.

82.     The Donor Defendants owed a duty to Plaintiff to harvest, process, and distribute a cadaver and human tissue without unreasonably dangerous defects that would cause him injury, and all other duties under the Act.

83.     At all times herein mentioned, the aforementioned FiberCel was defective in its manufacture in that the FiberCel units were contaminated with TB, through the use of the Donor Defendants contaminated human tissue, which in turn transplanted the serious and potentially deadly illness to patients, including Plaintiff, FREDDIE J. SMITH, who was implanted with the contaminated FiberCel.

14

84.     The FiberCel unit manufactured by Aziyo and Medtronic, containing contaminated human tissue that was harvested and sold by the Donor Defendants, and implanted into Plaintiff, FREDDIE J. SMITH, was unsafe, defective, and unreasonably dangerous before they left Defendants' possession, and was in the same condition when implanted into Plaintiff as when placed into the stream of commerce by Defendants.

85.     The Donor Defendants knew or should have known, based on the industry and scientific knowledge available at the time of their manufacture and distribution, that selling human tissue contaminated with TB for use in FiberCel was defective, unsafe, and unreasonably dangerous to FiberCel users, including Plaintiff, FREDDIE J. SMITH.

86.     At all times herein mentioned, ordinary consumers, including Plaintiff, FREDDIE J. SMITH, who was implanted with FiberCel, could not and would not have recognized the potential defects, risks, and dangers of contaminated FiberCel units.

87.     At all times herein mentioned, the aforementioned FiberCel, containing human tissue sold by the Donor Defendants, was implanted into Plaintiff in a manner which was reasonably foreseeable to the Donor Defendants.

88.     As a direct and proximate result of Plaintiff's use of the defective FiberCel unit, containing human tissue that was harvested, processed, and sold by the Donor Defendants, as manufactured, designed, sold, supplied, and distributed into the stream of commerce by the Defendants, Plaintiff contracted TB, which has caused Plaintiff to suffer harm, damages, and economic loss, and Plaintiffs will continue to suffer such harm into the foreseeable future.

89.     Additionally, the Donor Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of their human tissue that was used in the subject FiberCel lot to foreseeable users, including Plaintiff.

90.    While harvesting, processing, and selling their human tissue product, the Donor Defendants knew of a limited slate of conditions to test for, yet they failed to adequately test for those conditions, failed to warn the other Defendants that limited testing was done, and failed to warn hospitals and end-users like Plaintiff that its human tissue used in FiberCel was contaminated with tuberculosis and could cause substantial harm.

91.    The Donor Defendants knew or reasonably should have known that the warnings provided to users of FibeCel, which contained the Donor Defendants contaminated human tissue, regarding the risks associated with its use were incorrect or inadequate in at least the following material respects:

   a.  FiberCel, including its human tissue component, was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects; and

   b.  Donor Defendants failed to provide adequate warnings that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of FiberCel and the Donor Defendants human tissue, including, among other things, development of TB;

   c.  Donor Defendants failed to immediately warn patients and physicians after they learned that their human tissue product was contaminated with TB; and

   d.  Otherwise failed to provide adequate warnings.

92.    By failing to warn Plaintiff and Plaintiff's physicians of the adverse health risks associated with FiberCel and the contaminated human tissue used to make FiberCel, Donor Defendants breached their duty to Plaintiff of reasonable care and safety.

93.    Donor Defendants, as harvesters, processors, and sellers of human tissue products, are held to the level of knowledge of an expert in the field; and further, Donor Defendants knew, or should have known, that the warnings they provided regarding the risks of a contaminated human tissue product causing TB and associated injuries and complications following the implantation of FiberCel were inadequate.

94. Plaintiff did not have the same expert knowledge as Donor Defendants, and no adequate warning of other clinically relevant information and data was communicated to Plaintiff or Plaintiff's physicians.

95. Donor Defendants have a continuing duty to provide consumers, including Plaintiff and Plaintiff's physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with its human tissue product, as it came or could have become available to Defendants.

96. Donor Defendants harvested, processed, and sold unreasonably dangerous and defective human tissue for use in FiberCel, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Donor Defendants mislead the medical community about the risk and benefit balance of their human tissue to be used in FiberCel.

97. Donor Defendants knew or should have known that consumers, including Plaintiff specifically, would foreseeably and needlessly suffer injury as a result of Donor Defendants' failures.

98. Donor Defendants had an obligation to provide Plaintiff and Plaintiffs' physicians with adequate clinically relevant information, data, and warnings regarding the adverse health risks associated with the implantation of human tissue contaminated with TB.

99. By failing to provide Plaintiff and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with the implantation of human tissue contaminated with TB, Donor Defendants breached their duty of reasonable care and safety.

100. Donor Defendants' actions described above were performed willfully, and with reckless disregard of the life and safety of the Plaintiff and the general public.

101.    Donor Defendants' failure to provide adequate warnings was a proximate cause of Plaintiff's injuries and damages.

102.    As a direct and proximate result of the actions and inactions of the Donor Defendants as set forth above, Plaintiff was exposed to contaminated human tissue through the implantation of the FiberCel product and suffered the injuries and damages set forth herein above.

## THIRD CAUSE OF ACTION

### Negligence and Gross Negligence
### (Against Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies LLC)

103.    Plaintiff incorporates all paragraphs as though the same were set forth at length herein.

104.    Defendants owed a duty to Plaintiff, FREDDIE J. SMITH, to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of FiberCel into the stream of commerce, including a duty to assure that the FiberCel would not cause those who used it, including FREDDIE J. SMITH, to suffer adverse harmful effects.

105.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of FiberCel.

106.    Defendants' conduct was negligent, grossly negligent, willful, wanton, and/or reckless.  They acted with an extreme departure from ordinary care or the want of even scant care.

107.    Defendants knew or should have known that those individuals who used the defective FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

108.    Defendants were negligent and grossly negligent in designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and sale of FiberCel. The negligence, gross negligence, and/or willful misconduct of Defendants, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

a.  Designing manufacturing, producing, creating, and/or promoting FiberCel without adequately, sufficiently, or thoroughly testing the FiberCel units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

b.  Not conducting a sufficient quality control testing program to determine whether or not the subject FiberCel was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

c.  Failing to adequately and properly obtain and review complete donor medical history;

d.  Negligently failing to timely recall their dangerous and defective FiberCel lots at the earliest date that it became known that certain lots of FiberCel were, in fact, dangerous and defective;

e.  Negligently manufacturing FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies;

f.  Negligently producing FiberCel in a manner that was dangerous to those individuals who had it transplanted into their bodies;

g.  Negligently and carelessly harvesting an unqualified and inadequately screened human donor;

h.  Failing to identify signs of injury, sickness, and disease that should have immediately disqualified the subject donor as a potential donor;

i.  Negligently failing to test the human donor tissue and/or bone;

j.  Failing to warn individuals who were using the product of the risks of contracting tuberculosis;

k.  Were otherwise careless and negligent; and

l.  Other acts so deemed grossly negligent.

109.    Defendants knew or should have known that consumers, such as Plaintiff, FREDDIE J. SMITH, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

110.    Defendants' negligence, gross negligence, and/or willful misconduct was the proximate cause of Plaintiff's, FREDDIE J. SMITH, physical, mental, emotional injuries and harm, and economic loss.

111.    By reason of the foregoing, Defendants are liable to Plaintiff for all his injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future.

### FOURTH CAUSE OF ACTION

**Negligence and Gross Negligence**
**(Against DCI Donor Services, Inc. and New Mexico Donor Services)**

112.    Plaintiff incorporates all paragraphs as though the same were set forth at length herein.

113.    Donor Defendants owed a duty to Plaintiff FREDDIE J. SMITH to exercise reasonable care in harvesting, processing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of human tissue into the stream of commerce, including a duty to assure that their human tissue, which was used in the subject FiberCel lot, would not cause those who used it, including FREDDIE J. SMITH, to suffer adverse harmful effects.

114.    Donor Defendants failed to exercise reasonable care in the harvesting, processing, supplying, testing, quality assurance, quality control, sale, and distribution of their human tissue product for use in FiberCel.

20

115.     Donor Defendants' conduct was negligent, grossly negligent, willful, wanton, and/or reckless.  They acted with an extreme departure from ordinary care or the want of even scant care.

116.     Donor Defendants knew or should have known that those individuals who were exposed to their contaminated human tissue used in FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

117.     Donor Defendants were negligent and grossly negligent in the harvesting, processing, supplying, testing, quality assurance, quality control, sale, and distribution of their human tissue product for use in FiberCel. The negligence, gross negligence, and/or willful misconduct of Donor Defendants, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

a.  Harvesting, processing, and selling human tissue for use in FiberCel without adequately, sufficiently, or thoroughly testing the human tissue to ensure that it was free from contamination of communicable diseases, including but not limited to, tuberculosis;

b.  Not conducting a sufficient quality control testing program to determine whether or not the subject human tissue used in the aforementioned defective FiberCel lot was properly harvested and was free from contamination or other defects making it unsafe for users of the product;

c.  Failing to adequately and properly obtain and review complete donor medical history;

d.  Negligently failing to timely recall their dangerous and contaminated human tissue at the earliest date that it became known that its human tissue sold for use in FiberCel was in fact, dangerous and defective;

e.  Negligently harvesting, processing, and selling human tissue for use in FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies;

f.  Negligently and carelessly harvesting an unqualified and inadequately screened human donor;

21

g. Failing to identify signs of injury, sickness, and disease that should have immediately disqualified the subject donor as a potential donor;

h. Negligently failing to test the human donor tissue and/or bone;

i. Failing to warn individuals who were using their human tissue of the risks of contracting tuberculosis;

j. Were otherwise careless and negligent; and

k.   Other acts so deemed grossly negligent.

118.    Donor Defendants knew or should have known that consumers, such as Plaintiff, FREDDIE J. SMITH, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Donor Defendants' failure to exercise ordinary care, as set forth above.

119.    Donor Defendants' negligence, gross negligence, and/or willful misconduct was the proximate cause of Plaintiff's, FREDDIE J. SMITH, physical, mental, emotional injuries and harm, and economic loss.

120.    By reason of the foregoing, Donor Defendants are liable to Plaintiff, FREDDIE J. SMITH, for all his injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty
**(Against Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies LLC)**

121.    Plaintiff incorporates all paragraphs as though the same were set forth at length herein.

122.    Defendants are in the business of designing, manufacturing, testing, supplying, selling, and placing into the stream of commerce certain goods, including FiberCel.

123.    By placing FiberCel into the stream of commerce, Defendants impliedly warranted that it was merchantable and fit and safe for its intended use.

124.    The FiberCel placed into the stream of commerce by Defendants and implanted into Plaintiff was contaminated, leading those persons who received FiberCel implants to develop tuberculosis, including Plaintiff, and accordingly, was not fit, safe, or merchantable for its intended use.

125.    The contamination in the FiberCel, manufactured, supplied, and placed into the stream of commerce by Defendants was present at the time the FiberCel units left Defendants' control and at the time it was implanted into Plaintiff, FREDDIE J. SMITH, as part of his spinal operation.

126.    Defendants breached the implied warranty for FiberCel because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries suffered by Plaintiff, FREDDIE J. SMITH, including his development of tuberculosis.

127.    Plaintiff, FREDDIE J. SMITH, was a foreseeable user of the FiberCel designed, manufactured, and placed into the stream of commerce by Defendants.

128.    By reason of the foregoing, Defendants are liable to Plaintiff, FREDDIE J. SMITH, for his injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty
**(Against Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies LLC)**

129.    Plaintiff hereby incorporates by reference the allegations contained in all paragraphs of this Complaint as if they were set forth at length herein.

130.    At all times mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that FiberCel and its human tissue component are safe, effective, fit, and proper for their intended use.  Plaintiff and Plaintiff's physicians utilized FiberCel relying upon these warranties.

131.    Defendants' own promotion states that FiberCel is processed in sterile conditions and is screened for bacteria and communicable disease.

132.    In utilizing FiberCel, Plaintiff relied on the skill, judgment, representation, and foregoing express warranties of the Defendants.  These warranties and representations were false in that FiberCel is unsafe and unfit for its intended uses.

133.    As a result of the abovementioned breach of express warranties by Defendants, Plaintiff FREDDIE J. SMITH suffered injuries and damages as alleged herein.

## SEVENTH CAUSE OF ACTION

### Breach of Express Warranty
### (Against DCI Donor Services, Inc. and New Mexico Donor Services)

134.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

135.    At all times mentioned, Donor Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that their human tissue product sold for use in FiberCel is safe, effective, fit, and proper for its intended use. Plaintiff and Plaintiff's physicians utilized FiberCel and the human tissue used in FiberCel relying upon these warranties.

136.    In utilizing FiberCel and the human tissue used in FiberCel, Plaintiff relied on the skill, judgment, representation, and foregoing express warranties of the Defendants.   These warranties and representations were false in that FiberCel and its human tissue component are unsafe and unfit for its intended uses.

137.    As a result of the abovementioned breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

### EIGHTH CAUSE OF ACTION

**Medical Monitoring**
**(Against Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., Spinalgraft Technologies LLC)**

138.    Plaintiff hereby incorporates by reference the allegations contained in all paragraphs of this Complaint as if they were set forth at length herein.

139.    As a result of the Defendants' negligence and gross negligence, Plaintiff FREDDIE J. SMITH has been diagnosed with TB, and may in the future experience ongoing symptoms of TB, in addition to other injuries and harm that he may suffer as a result of his TB diagnosis.

140.    A monitoring procedure exists to monitor Plaintiff's TB since all TB patients require continual and ongoing monitoring of their potentially deadly disease.

141.    Plaintiff will be required to undergo testing and analysis to monitor the spread and progression of his TB.

142.    Ongoing TB testing requires expenditures of time and money.

143.    The prescribed monitoring regime is different from that normally recommended for an individual like Plaintiff in the absence of the development of TB.

144.    The prescribed monitoring regime is reasonably necessary according to contemporary scientific and medical principles.

145.    Defendants' acts were negligent, grossly negligent, and want of even slight care and diligence, and they should be held accountable, and should compensate Plaintiff for the ongoing costs of monitoring his TB.

## NINTH CAUSE OF ACTION

### Medical Monitoring
### (Against DCI Donor Services, Inc. and New Mexico Donor Services)

146.    Plaintiff hereby incorporates by reference all the prior allegations contained in the above paragraphs of this Complaint as if they were set forth at length herein.

147.    As a result of the Donor Defendants' negligence and gross negligence, Plaintiff has been diagnosed with TB, and may in the future experience ongoing symptoms of TB, in addition to other injuries and harm that he may suffer as a result of his TB diagnosis.

148.    A monitoring procedure exists to monitor Plaintiff's TB since all TB patients require continual and ongoing monitoring of their potentially deadly disease.

149.    Plaintiff will be required to undergo testing and analysis to monitor the spread and progression of his TB.

150.    Ongoing TB testing requires expenditures of time and money.

151.    The prescribed monitoring regime is different from that normally recommended for an individual like Plaintiff in the absence of the development of TB.

152.    The prescribed monitoring regime is reasonably necessary according to contemporary scientific and medical principles.

153.    Donor Defendants' acts were negligent, grossly negligent, and want of even slight care and diligence, and they should be held accountable, and should compensate Plaintiff for the ongoing costs of monitoring his TB.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for relief against Defendants, jointly and severally, as follows:

   a.  Compensatory damages exclusive of interest and costs, and in an amount to fully compensate Plaintiffs for all past, present, and future pain, and suffering, and loss of consortium;

   b.  Special damages, exclusive of interest and costs, and in an amount to fully compensate Plaintiff FREDDIE J. SMITH for all of his injuries and damages, both past and present;

   c.  An order to establish a medical monitoring protocol for Plaintiff FREDDIE J. SMITH to monitor his health;

   d.  Attorneys' fees, expenses, and costs of this action;

   e.  Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

   f.  Such further relief as this Court deems necessary, just, and proper.

Respectfully submitted,


/s/ Joseph A. Gregorio
Joseph A. Gregorio, Esq.
1100 Benton Road
Bossier City, LA 71111
Phone: (318) 747-0384
Fax: (318) 746-5222
joe@bossiercitylawyer.com
*On behalf of Plaintiffs*

/s/ Lawrence R. Cohan
Lawrence R. Cohan, Esq.
Joshua C. Cohan, Esq.
Alison J. Russell, Esq.
(*Subject to admission pro hac vice*)
**SALTZ MONGELUZZI
& BENDESKY P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Phone: (215)-486-8282
Fax: (215) 496-0999
lcohan@smbb.com
jcohan@smbb.com
arussell@smbb.com
*On behalf of Plaintiffs*


Dated:  May 13, 2022